## TEMPLE, BRISSMAN & COMPANY v. GREATER ST. PAUL CORPORATION AND ANOTHER.[1]

June 9, 1933.

No. 29,447.

*Kerr, Nelson, O'Neill, Mohan & Dudley,* for appellant.
*Clifton T. Parks,* for respondent.

*LORING, Justice.*

In an action in the municipal court of St. Paul to recover for services in auditing corporation books the plaintiff had a verdict against the corporation defendant. It appeals from the judgment after denial of its motion for judgment notwithstanding the verdict or for a new trial.

H. Martin Johnson, president of the Greater St. Paul Corporation, engaged the plaintiff to audit the books of that company. The corporation's sole function was the collection of rents from a single parcel of property a part of which was occupied by Johnson for carrying on his drug business. He paid rent to the corporation, in which he was a stockholder, director, and president. The treasurer of the corporation, Paul Kerfoot, handled all the funds of the company through books used in the conduct of his personal business. In 1926 Johnson objected to this method of handling the affairs

[1]Reported in 248 N. W. 819.

of the corporation and requested an audit of the books. An audit was accordingly made, Johnson as president engaging the accountants. Sometime thereafter Johnson demanded another audit, which was also made. Both of these audits were paid for by the corporation. In 1929 Johnson demanded that another audit of the books be made, but Kerfoot stated that he would not agree to paying for any further investigation. Johnson nevertheless engaged plaintiff in behalf of the corporation to make a third audit, and plaintiff brought this action against the corporation and Johnson individually for its fees in connection therewith.

At the beginning of the trial the Greater St. Paul Corporation and plaintiff stipulated that plaintiff had prepared an audit of the books of that company and that the reasonable value of the services was as alleged in the complaint. It was then conceded that one or the other of the defendants was liable in the stipulated amount. The question was which should pay. The corporation contended that Johnson was liable personally for the expense of the audit and that he had no authority to enter into such a contract on its behalf.

The main question presented is whether or not Johnson as president had authority to bind the corporation by this contract with plaintiff.

"The powers of the president of a corporation are not well defined, but depend largely upon the practice of the particular corporation. * * * A corporation may clothe an officer with apparent authority beyond his authority as defined by the articles of incorporation or by-laws and be bound accordingly to third parties acting in reliance thereon." 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 2114.

Johnson had ordered two audits by plaintiff before, and the corporation had paid for them. We think that this fact in itself is sufficient to bind the corporation, even assuming that the act itself was beyond the actual authority vested in Johnson as president. We do not, however, hold that this act of the president's was outside of his actual authority. The case of Traxler v. Minneapolis C. & L. Co. 128 Minn. 295, 150 N. W. 914, holds that a contract

entered into by the president of a corporation with an attorney to defend the corporation was within his implied authority. We can see little difference between the contract in that case and the one at bar. In both instances the president was acting to protect the corporation.

Appellant cites the case of Grant v. D. M. & N. Ry. Co. 66 Minn. 349, 69 N. W. 23, and quotes therefrom. That case held that the president of the defendant railroad had no authority to bind it by agreeing that it would pay any loss sustained by the plaintiff upon a contract previously entered into by the defendant railroad and plaintiff. We think that case is easily distinguished from the one at bar. The president's act in the former was clearly contrary to the powers delegated to him by the articles of incorporation, and the corporation had never clothed him with any apparent authority to enter into such a contract. But as has been stated above, even though we should hold that Johnson's act was not an implied power vested in him as president, the corporation had clothed him with the apparent authority to hire the audits by paying for two previous audits ordered by him. In Grant v. D. M. & N. Ry. Co. 66 Minn. 349, 352, 69 N. W. 23, 24, this court, speaking through Mr. Justice Mitchell, stated:

"Courts * * * have usually adopted a very liberal rule in favor of persons contracting with such officers, whenever there was evidence reasonably tending to show that it had been the custom, *and hence with the presumed acquiescence* of the directors, for the president or other officer to exercise such powers."

Exception was taken to the court's charge relative to burden of proof. At the outset of the trial it was conceded that the only question to be tried was which defendant was liable. There could be no verdict for both defendants. The controversy therefore resolved itself into one between the defendants. In effect the court charged that the burden was on either defendant to show that the other was liable. What he actually said was that the burden was on either to show that he or it was not liable, but we think the jury was in no way misled.

Affirmed.